UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
:
ROBERT LEDERMAN and JACK NESBITT,      :
:
Plaintiffs,      :
:
-against-      :
:
NEW YORK CITY DEPARTMENT OF PARKS   :
AND RECREATION (as a Municipal  agency);   :
ADRIAN BENEPE (in his Individual and Official :
 Capacity as the Parks Commissioner);      :
CITY OF NEW YORK (as a municipality);      :
and HONORABLE MICHAEL BLOOMBERG   :
(in his Official Capacity as the Mayor),      :
:
Defendants.  :
-------------------------------------------------------------X

**SUMMONS WITH**
**VERIFIED COMPLAINT**

## VERIFIED COMPLAINT

Plaintiffs, Robert Lederman (hereinafter "Lederman") and Jack Nesbitt (hereinafter "Nesbitt"), by their attorneys, Milner Law Office, PLLC, as and for their Verified Complaint, respectfully allege as follows:

### STATEMENT OF THE CASE

1.      This is a proceeding brought under 42 U.S.C. §§ 1983, 1985, 1986, 1988 by individual artists engaging in free expression to enforce their rights pursuant to the First and Fourteenth Amendments of the Constitution of the United States, and Article I, §§ 8 and 11, of the New York State Constitution.

### PROCEDURAL HISTORY

2.      To provide background to the instant action, the former Mayor of the City of New York, Rudolph Giuliani, along with certain city officials and law enforcement officials, in a concerted

effort to prohibit visual artists from displaying or selling works of their own creation on city

sidewalks, sought to enforce a largely unnoticed, long dormant city regulation, General Vendors

Law, §§ 20-452 *et seq.,* of the Administrative Code of the City of New York (hereinafter the

"GVL"), which barred visual artists from exhibiting, selling or offering their work for sale in

public places in New York City without first obtaining a general vendors' license. Plaintiffs were

arrested on many, well-publicized occasions for displaying their artwork on the streets of the

City of New York without licenses, because there had been a moratorium on licenses imposed by

the Department of Consumer Affairs since 1979 that continues to the present day.

3.      In two previous actions brought by artists, including the Plaintiff Lederman, entitled *Bery*

*v. City of New York,* 97 F.3d 689 (2d Cir. 1996), *cert. denied,* ___ U.S. ___, 117 S. Ct. 2408, 138

L. Ed. 2d 174 (1997) (hereinafter "*Bery*"), the United States Court of Appeals, Second Circuit,

declared that the licensing requirement of the GVL was an unconstitutional infringement of the

artists First Amendment rights to display and sell their works of art on city streets. The United

States Supreme Court denied the application of defendant City of New York (hereinafter "City")

for a Writ of *Certiorari,* thereby establishing *Bery* as legal authority in this Court.

4.      Plaintiffs have the well-established right under *Bery* to display and sell their artwork on

the sidewalks of New York City without a permit, because the exception under the GVL

allowing for an exemption from the licensing requirement for written matter vendors must

equally apply to artists. Nevertheless, the denial of *cert* did not deter the City from concocting

new schemes to circumvent and disregard the case law.

5.      Despite the ruling that the City could not require street artists to obtain permits before

selling their work on sidewalks because such a law would violate their freedom of speech, 56

R.C.N.Y. §§ 1-03(b)(6), and 1-05(b) went into effect on March 1, 1998 and limited the number

of sidewalk vendors of art to only twenty-four in the vicinity of outside the Metropolitan

Museum of Art (hereinafter "Met"), with no spaces directly in front of the Met, an area under the

jurisdiction of defendant New York City Department of Parks and Recreation (Hereinafter

"Parks").

6.      The sidewalk adjacent to the front of the Met is traditionally the most vital location for

artists in the City, such as Plaintiffs, to display their artwork. On the pretext of alleviating

pedestrian congestion in front of the Met, City officials determined that Parks limit the number

of artists who could display adjacent to the front of the Met and required those artists to obtain

permits. The artists' demonstrations for sixty-five straight days outside the Met resulted in them

being arrested, jailed, threatened with arrest, ticketed, assaulted, falsely arrested and imprisoned,

harassed, and their artwork confiscated and destroyed.

7.      The artists filed suit and eventually won in *Lederman v. Giuliani*, 2001 U.S. Dist. LEXIS

11567. District Judge Lawrence McKenna relied on the "highly persuasive" legal analysis in

*People v. Balmuth*, 178 Misc.2d 958, 681 N.Y.S.2d 439, 1998 N.Y. Slip Op. 98632, to rule for

the artists and granted a permanent injunction enjoining  the City from enforcing the provisions

of the new Park rules against artists.

8.      In *Balmuth*, Judge Lucy Billings dismissed all criminal charges against the artists and

gave a stern warning to the City that "licensing is not a permissible restriction on vending of

written material under any circumstances."

9.      The City has exhausted all appeals against the artists' court victories. However, instead of

recognizing the rights of artists as established by the case law, the City has apparently waged a

counter movement to quash those rights. One instance that illustrates this is that when the New

York City Administrative Code was updated on September 15, 2005,  the Case Notes at 2, ¶2

within Title 20, Subchapter 27, §20-452, mischaracterizes the injunction as "temporary" despite the exhaust of appeals.

10.     Furthermore, the code cites to an overruled case, *People v. Milbry*, 140 Misc.2d 476 (1988), as its authority to continue to assert, in contradiction to the current case law, that artists are non-exempt for licensure. By "licensing," this Court includes "any license, permit, or authorization requirement," pursuant to *Lederman v. Giuliani*.

11.     At bar is Revision of §§1-02 and 1-05(b) of Title 56 of the Official Compilation of the Rules of the City of New York (hereinafter "Revision"), which is Parks Commissioner Adrian Benepe's latest attempt to impose a prior restraint on the plaintiffs' speech through what may be fairly characterized as a licensing scheme.

12.     Plaintiffs therefore seek a judgment declaring this revision of the Parks regulations unconstitutional on its face; permanently enjoining defendants from enforcing such provisions as to prevent further irreparable injuries to the Plaintiffs' constitutional rights; and awarding them attorneys fees, costs, and any other damages and relief the Court deems just and proper.

## JURISDICTION

13.     Jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), 1367 (supplemental), 2201 and 2202 (declaratory judgment), 42 U.S.C. §§ 1983 and 1988 (civil rights).

## VENUE

14.     Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391 (b)(1-2).

**PARTIES**

15.      Plaintiff ROBERT LEDERMAN (hereinafter "LEDERMAN") is a visual artist residing

at 49B Hastings Ave., Rutherford, NJ   07070, and a well known First Amendment activist who

successfully challenged former Mayor Rudolph Giuliani's restrictive policies against artists

during his "quality of life" campaign.

16.      Plaintiff JACK NESBITT (hereinafter "NESBITT") is a veteran, senior citizen, half

Native American, and visual artist residing at 366 West 118th Street, New York, NY 10026; Mr.

Nesbitt is a First Amendment activist who also makes and sells political buttons.

17.      Defendant PARKS is an agency of the City maintaining an address at The Arsenal,

Central Park, 830 Fifth Avenue, New York, New York 10021.

18.      Defendant ADRIAN BENEPE (hereinafter "Benepe") is being sued in his official

capacity as the Parks Commissioner, and is also being sued in his individual capacity because

upon information and belief he is abusing the power of his position to engage in a conspiracy to

violate the civil rights of the Plaintiffs in violation of 42 U.S.C. § 1985, and to retaliate against

them for asserting their constitutional rights, and against Lederman specifically for speaking out

against the Commissioner in matters of public concern.

19.      Defendant CITY is a municipal corporation duly incorporated under the laws of the State

of New York.

20.      Defendant HONORABLE MICHAEL BLOOMBERG (hereinafter "Mayor") is being

sued in his official capacity as the Mayor of the City of New York and the Supervisor of Benepe

and Parks, pursuant to the *Monell* doctrine allowing for municipal liability through 42 U.S.C. §

1983.  The Honorable Mayor failed to properly supervise Benepe, whom he directly controls, as

well as neglected to prevent Benepe's conspiracy to deprive the Plaintiffs of their civil rights in

violation of 42 U.S.C. § 1986.

## FACTUAL BACKGROUND

21.     The provisions of the Revision of §§1-02 and 1-05(b) of Title 56 of the Official

Compilation of the Rules of the City of New York (hereinafter "Revision") is attached as Exhibit

A and states, in relevant parts:

(a)
"…expressive matter vendors may only vend expressive matter at the
Specifically designated spots identified by the Commissioner in the
accompanying maps and as marked by a Department decal, medallion,
or other form of marking, on the specific location of the approved vending
spot, unless they are only vending expressive matter without using a cart,
display stand or other device and without occupying a specific location for
longer than necessary to conduct a transaction and are otherwise in compliance
with Department rules."

(b)
"These spots shall be allocated upon a first come, first serve basis
except as otherwise provided by law and any expressive matter
vendor may only vend expressive matter centered directly
behind the Department decal, medallion, or other form of
marking. Only one expressive matter vendor is authorized to
vend directly behind the Department decal, medallion, or
other form of marking as indicated by the Department decal,
medallion, or other form of marking and if multiple
expressive matter vendors attempt to vend expressive matter
at any one Department decal, medallion, or other form of
marking and if it cannot be otherwise determined which
expressive matter vendor arrived first, then all such
expressive matter vendors at such spot will be in violation of
this section and may be directed to leave the area of that
Department decal, medallion, or other form of marking
immediately. Any such expressive matter vendor failing to
leave the area of the Department decal, medallion, or other
form of marking immediately upon direction as required
under the preceding sentence will be in violation of these
rules."

(c)
"The designated spots may deviate from the restrictions

6

enumerated in subsection 5(i), (iv), (v), or (vi), if such spots
are determined to be appropriate by the Commissioner given
the specific features of the park."

22.     Since this Revision does not further implement the law as it now exists,  Park's authority

for issuing this Revision is suspect because it is "out of harmony" with the spirit of the existing

regulations that exempt written matter vendors from a licensing scheme in order to protect their

First Amendment rights.[1] Moreover, it is not consistent with the "uniform practice" of the Parks

for the past nine years.[2] Artists have been able to sell anywhere in the parks as long as they were

in compliance with the GVL. Finally, it actually contradicts §1-04(a) of the Park rules by the

Park's own admission.[3]

23.      Upon information and belief, the stated reasons for promulgating this Revision, namely

for "public safety" and to "ease congestion," are pretextual; and in light of the many activities in

the parks that create massive congestion and public risks, are irrational and unreasonable.[4] Parks

has not cited to any congestion study, nor has it even conducted a simple headcount of the actual

number of artists in the park. Instead, Parks made conclusory statements in the Revision about

"proliferation" and "dramatic increase" of expressive matter vendors, which have

"overwhelmed" the parks and "tripled since 2001."

24.      Upon information and belief and in furtherance of a conspiracy to deprive Plaintiffs of

their civil rights, Benepe promulgated this Revision in retaliation for the plaintiffs' use of the

High Line for their First Amendment protected activities; for asserting claims against him for

---

[1] For the standard of review for regulations promulgated by administrative agencies, see *Jones v. Berman*, 37
N.Y.2d 42, 371 N.Y.S.2d 422, 429, 332 N.E.2d 303 (1975).
[2] A doubtful or ambiguous statute must be interpreted in accordance with the "uniform practice." *State of Wisconsin
v. State of Illinois*, 278 U.S. 367, 413, 49 S. Ct. 163, 170 (1929).
[3] On April 27, 2010, Betsy Smith, Assistant Commissioner for Revenue and Marketing for Parks, testified in front of
a New York City Council hearing on Intro #21that clear boundaries for concessions stands would violate §1004(a)
of the Park rules.
[4] For the standard of when an agency's interpretation of the statutes it administers must not be upheld, see
*Seittelman v. Sabol*, 91 N.Y.2d 618, 674 N.Y.S.2d 253, 256, 697 N.E.2d 154 (1998)

violating their civil and constitutional rights; and, in the case of Lederman, speaking out against

Benepe's actions as a matter of public concern.

## FIRST CLAIM FOR RELIEF
### (Free Speech)

25.     Plaintiffs repeat and reallege each and every allegation contained hereinabove as though

set forth more fully herein.

26.     The Revision as enacted and as applied to Plaintiffs, operate as a prior restraint on

constitutionally protected speech under the First Amendment to the United States Constitution

and Article 1, § 8, of the New York State Constitution, in that they require authorization from the

Park's Commissioner to engage in such activity and thus effectively bar Plaintiffs from

displaying or selling their art in the enumerated parks.

27.     The free speech rights affected by the Revision are fundamental rights guaranteed by the

First Amendment of the Constitution of the United States and Article 1, § 8 of the Constitution of

the State of New York.

28.     The Revision is not narrowly tailored to serve a significant governmental interest; nor is

it "narrow, objective, and [with] definite standards to guide the licensing authority," as required

by the Supreme Court.[5]

29.     Upon information and belief, the Revision will be utilized against artists such as Plaintiffs

for the distinct purpose of curtailing their First Amendment and Article 1, § 8, rights.

30.      Plaintiffs' display and sale of their original artworks in these parks are intended to

convey a political message.

---

[5] *Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123, 131 (1992), quoting *Shuttlesworth v. Birmingham*, 394 U.S. 147, 151 (1969).

31.     The constitutional flaws of the Revision have been and still are known to Defendants; nevertheless, Defendants, acting in furtherance of a conspiracy, have promulgated these regulations knowing that they violate Plaintiffs' constitutional rights.

## SECOND CLAIM FOR RELIEF
### (Declaratory Judgment)

32.     Plaintiffs repeat and reallege each and every allegation contained hereinabove as though set forth more fully herein.

33.     For all of the above-mentioned reasons, there exists an actual, substantial and immediate controversy within the Court's jurisdiction, which controversy is the result of Defendants' conduct and which controversy can be redressed by a judicial decision in favor of Plaintiffs. Thus, the Court may properly declare Plaintiffs' constitutional and civil rights in respect of this action.

## THIRD CLAIM FOR RELIEF
### (Equal Protection)

34.     Plaintiffs repeat and reallege each and every allegation contained hereinabove as though set forth more fully herein.

35.     Plaintiffs are members of a special class because they are engaged in political speech and other First Amendment protected activities which are fundamental rights.

36.     Upon information and belief, the real purpose behind the Revision is to rid the parks of artists and independent written matter vendors in order to give preference to corporate vendors, who are not engaged in political speech or other First Amendment protected activities, who will pay the City a premium for exclusive use of the public spaces for their corporate activities.

37.     Upon information and belief, the existing GVL is not enforced against corporate book vendors operating illegally at the very congested 60th Street subway entrance; Strand Bookstore

9

has three kiosks and eleven 6 feet tables there which are not in compliance with the GVL.

38.     Upon information and belief, the Green Market in Union Square Park, the Holiday Markets, corporate-owned art installations, and special corporate events create more danger and congestion than all artists combined, but even a single artist is prohibited to set up in a space regularly reserved for the Green Market on the days the Market is closed. Moreover, these Park-sanctioned events block paths, obstruct access to benches and subways, damage trees and other Park property and deny the public full access to the exact parks that are affected by these rules.

39.     Upon information and belief, the Mayor's personal favorite artists are given carte blanche to exhibit their works on a grand scale; in 2005, Christo and Jeanne-Claude's "The Gates," some 7,503 gate-like monstrosities encumbered over 23 miles in Central Park for fifteen days; in 2008, from June 26 to Oct 13, Olafur Eliasson's "NYC Waterfalls" displayed artificial waterfalls arising from four hideous metallic structures that wasted energy from 7am to 10pm; and in May of this year, warning signs and caution tape due to the risk of children getting scalded were finally put up on large metal domes designed by a consultant hired by the Union Square Partnership Business Improvement District in Evelyn's Playground in Union Square Park and Brooklyn Bridge Park.

40.     All the artists and written matter exempted vendors in the City combined, even if standing side by side with their respective wares, could not create the congestion caused by "The Gates," would not usurp the energy of the "NYC Waterfalls," and would not pose a scalding risk to children; yet Parks is attempting to mischaracterize Plaintiffs and other non-favored artists as a safety risk in order to justify an otherwise irrational means to get rid of them.

41.     For five years in the late 1990's the Parks Department operated an art vending concession along Central Park South, an area they now want to limit to [5] artists. During those years the art

vending concession had 160 stands, all of them far larger than any stand that the vending laws allow.

42.     Defendants have engaged and continue to engage in behavior that violates Plaintiffs' constitutional rights of Equal Protection, and have thereby irreparably injured Plaintiffs. If this unconstitutional conduct is not enjoined, Plaintiffs will continue to be irreparably injured.

## FOURTH CLAIM FOR RELIEF
### (Civil Rights - 42 U.S.C. § 1983)

43.      Plaintiffs repeat and reallege each and every allegation contained hereinabove as though set forth more fully herein.

44.      Defendants are persons who, under color of law, and as a result of their promulgation and impending enforcement have subjected and will subject Plaintiffs to the deprivation of their civil rights as guaranteed by the First and Fourteenth Amendments of the United States Constitution.

45.      Defendants have engaged and continue to engage in behavior that violates Plaintiffs' constitutional rights of free speech and equal protection and have thereby irreparably injured Plaintiffs.

## FIFTH CLAIM FOR RELIEF
### (Civil Rights – 42 U.S.C. § 1985)

46.     Plaintiffs repeat and reallege each and every allegation contained hereinabove as though set forth more fully herein.

47.     Upon information and belief, Benepe has ordered the PEP Officers to be trained in the enforcement of this new rule by playing for them the tape of plaintiff Robert Lederman's illegal arrest on the High Line.

48.     Upon information and belief, even though this arrest was illegal and violated Lederman's civil rights, it is being held as a model for the PEP officers to follow to continue violating the plaintiffs' and other artists' civil rights.

49.     Upon information and belief, this type of training is an act in furtherance of the conspiracy by one or more persons engaged therein to deprive plaintiffs of their civil rights.

## SIXTH CLAIM FOR RELIEF
### (Civil Rights – 42 U.S.C. § 1985)

50.     Plaintiffs repeat and reallege each and every allegation contained hereinabove as though set forth more fully herein.

51.     Mayor Bloomberg has actual knowledge that wrongs are and have been conspired to be done because he has been informed by plaintiff Lederman that defendant Benepe has violated his civil rights, has conspired with others to violate his civil rights, and continues to conspire with others to violate his civil rights.

52.     Moreover, the Mayor has constructive knowledge that Benepe is and has been conspiring to violate plaintiffs' rights because he knew or should have known that the arrests on the High Line were illegal and that this new rule is in retaliation for the settlement of those claims against the City.

53.     Because of the Mayor's failure to exercise his direct control and supervision over Benepe to prevent this conspiracy to violate the plaintiffs' civil rights, the plaintiffs have been, and will continue to be damaged.

## SEVENTH CLAIM FOR RELIEF
### (*Monell* Claim)

54.     Plaintiffs repeat and reallege each and every allegation contained hereinabove as though set forth more fully herein.

55.     Both Benepe and the Mayor are municipal policymakers for purposes of §1983 liability.

56.     The plaintiffs have a fundamental right to enjoy freedom of speech, as guaranteed under the Constitution.

57.     The City of New York has a historic and well known practice, policy and custom operating, *inter alia*, within the Parks Department which permits, condones, ratifies the vindictive, harassing, abusive, retaliatory conduct against artists who assert their First Amendment rights within the jurisdiction of the parks.

58.     As a result, plaintiffs have been victims of this policy in that the retaliation against them was permitted, condoned, ratified and encouraged because they both voiced opposition to violations of their rights.

59.     The Mayor had personal knowledge of Benepe's abuse of his position to prevent plaintiffs from, and then retaliating against them for, expressing themselves through their art on the High Line.

60.     The Mayor was informed that Benepe and/or his agents abused process when Lederman was ordered to be arrested on sight, both plaintiffs were actually arrested, and both plaintiffs were actually issued multiple bogus summonses in a concerted effort to deprive them of their First Amendment rights.

61.     Despite the City settling the violations of plaintiffs' rights on the High Line, Mayor Bloomberg is not properly supervising Benepe because he is allowing him to promulgate this Revision which is constitutionally defective on its face, and in effect creates a licensing scheme in direct violation of Judge McKenna's permanent injunction.

62.     Furthermore, the Mayor is remiss in not questioning the timing of the release of this

Revision so soon after such settlement, as it has the appearance of being in retaliation for

plaintiffs' asserting their rights in regard to the High Line, especially since there was much more

public outcry than support for this Revision.

63.     Plaintiffs have suffered injuries and damages, and seek attorneys' fees and costs.

        **WHEREFORE**, Plaintiffs respectfully request the following relief:

(a)     A declaratory judgment that the Revision of §§1-02 and 1-05(b) of Title 56 of the

Official Compilation of the Rules of the City of New York is unconstitutional facially under the

United States Constitution and the New York State Constitution, and that enforcement of those

regulations violate Plaintiffs' civil rights under 42 U.S.C. §§ 1983, 1985, 1986 and 1988.

(b)     A permanent injunction enjoining Defendants and their agencies, officers, employees,

agents and all persons acting in concert with them from enforcing, by means of arrest, threats of

arrest, issuance of summonses, confiscation of materials or any other means of enforcement, the

Revision.

(c)     An award of monetary damages to Plaintiffs for those compensable injuries suffered by

Plaintiffs in the above claims as a result of Defendants' acts of retaliation against them, to be

determined by this Court as the finder of fact, but in no case less than $1,000,000 for each

plaintiff.

(d)     An award of monetary damages to Plaintiffs for those compensable injuries suffered by

Plaintiffs in the above claims as a result of Defendants' acts of negligent supervision, to be

determined by this Court as the finder of fact, but in no case less than $1,000,000 for each

plaintiff.

(e)     An award of monetary damages to Plaintiffs for those compensable injuries suffered by

Plaintiffs in the above claims as a result of Defendants' constitutional torts, to be determined by

this Court as the finder of fact, but in no case less than $1,000,000 for each violation, to each

plaintiff.

(f)     An award of reasonable attorneys' fees pursuant to §1988.

(g)     Any other relief to which this honorable Court deems just and proper.

Dated:          Queens, New York
                June 18, 2010

                                            Respectfully submitted,

                                            ___/s/ Julie Milner__

                                            JULIE MILNER
                                                (JM1227)

                                        MILNER LAW OFFICES, PLLC
                                            Attorneys for Plaintiffs
                                        8302A Broadway, 3rd Floor Suite
                                            Elmhurst, NY 11373
                                                (718) 766-5242